UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| DENVER KING, | CASE NO. 5:25-CV-312-KKC |
| **Plaintiff,** | |
| v. | OPINION and ORDER |
| ILAN BEAR, | |
| **Defendant.** | |

*** *** ***

This matter is before the Court on Defendant Ilan Bear's Motion to Dismiss. (R. 3.) Now that this matter is fully briefed, it is ready for review. For the following reasons, Bear's Motion is granted.

## I.   FACTUAL BACKGROUND

The allegations in Plaintiff Denver King's Complaint arise from his August 7, 2024 arrest. On that date, Defendant Bear, employed as an officer with the City of Cynthiana Police Department arrested King for menacing, theft by deception involving an automobile, tampering with physical evidence, and obstructing governmental operations. (R. 1-1 ¶ 4.)

Earlier that evening, an individual named Carter Edwards reported to police that his vehicle had been stolen. (R. 3-1 at 3.) Around 9:27 p.m., Officer Bear arrived at Edwards' residence, where Edwards and his mother explained that his 2000 Dodge Ram pickup truck (the "truck") had been taken after he wrecked it the previous Wednesday. (*Id.*) Edwards told Officer Bear that the truck had been towed to King's property following the wreck, and that despite his request, King refused to return it. (*Id.*) Edwards told Officer Bear that after the truck had gone missing, he had seen it at the residence of an individual named Willie Middleton. (*Id.*) Edwards then described the general location of the property and what the

house where the truck was located looked like. (Bodycam, 21:28:40.) Edwards then told Officer Bear that he knew the truck on Middleton's property was his because it was damaged and showed identifiable paint markings on a fender that he had replaced. (Bodycam 21:29:15.) Edwards further stated that King was upset because King's daughter had been involved in the wreck. (R. 3-1 at 3.)

Officer Bear asked whether Edwards had a license plate or other vehicle information. (Bodycam 21:30:20.) Edwards said the truck was not yet registered in his name, explaining that he had recently purchased it from an Ohio seller but had not yet completed the registration process. (Bodycam 21:30:35–40.) Edwards then showed Officer Bear a photograph of the title, which was signed in his name. (R. 3-1 at 4.) Edwards also advised Officer Bear that there was a handgun in the truck's console. (*Id.* at 3.)

Officer Bear then accompanied Edwards and his mother to Middleton's property to locate the truck. (*Id.*) The truck parked on the property matched Edwards' description, and Edwards' key fob fit into the ignition switch, which had been physically torn out of the steering wheel column. (R. 3-1 at 4.) A device Edwards installed under the hood was also identified. (*Id.*) The handgun was not recovered. (Bodycam 22:19:40.) Officer Bear, Edwards, and his mother then returned to wait for a tow truck to remove the truck from Middleton's property. (*Id.*)

Shortly thereafter, King arrived on scene. (*Id.*) As he approached Officer Bear, King stated that the truck belonged to him and that it had been sold and transferred to Middleton. (Bodycam 23:01:40.) Officer Bear responded that he had already seen a photograph of the title bearing Edwards' name. (Bodycam 23:01:45.) Officer Bear and King then argued about ownership of the truck, the missing handgun, and an EPO. (Bodycam 23:02:30.) Officer Bear told King, "We're not doing this. You can go ahead and leave." (Bodycam 23:03:45.) When King replied, "We're not done here," Officer Bear responded, "Yes we are. You can leave or

2

you can go to jail." (*Id.*) Officer Bear then warned King that if he continued with "this intimidation crap," he could "go down the road" (implying that he would be taken to jail). (Bodycam 23:03:05.) Officer Bear then placed King under arrest and escorted him to the back of the patrol vehicle. (R. 23:03:40.)

Officer Bear explained that King was being arrested because he had been "all big and bad" and had tried to intimidate him, telling King, "you don't come up to me and get all menacing and all that." (Bodycam 23:05:20.) Officer Bear then explained the basis for the theft charges: Edwards' name appeared on the title, King had towed the truck to Middleton's property without permission, and the ignition had been removed. (Bodycam 23:06:00–55.) King responded that he had given Edwards money to purchase the truck, that Edwards never paid him back, and that after the wreck he told Edwards to tow the truck to King's house because Edwards had not paid for it. (Bodycam 23:07:05–30.) King further stated that he told Edwards he would not get the truck back and that King had the title in his possession. (*Id.*) Officer Bear told King that possession of the title did not make the truck his, because the title he had seen was signed in Edwards' name. (Bodycam 23:07:40.) King said he believed he "could have [the title] switched" because Edwards had not transferred it within fourteen days. (Bodycam 23:08:15–25.) Officer Bear responded, "no. With his name on [the title] you can't do that, that's altering the whole title and everything." (Bodycam 23:08:25.)

Officer Bear then followed up with Edwards, who denied that Mr. King had given him the money to purchase the truck, and stated that King had paid him money owed for labor which Edwards used to purchase a different vehicle that he then traded for the truck. (R. 3-1 at 4.)

Soon thereafter, Middleton arrived on scene. (*Id.*) Middleton informed Officer Bear that he traded with King for the truck, had it inspected, and had the title transferred into his name. (*Id.*) Middleton initially told Officer Bear that the title was not signed, but later

3

clarified that it had been signed by the Ohio seller, and that while Edwards' name had been on the title, he had not signed in the correct location as the buyer. (*Id.*) He also advised Officer Bear that after the wreck King found the handgun in the truck. (*Id.*)

Towards the end of the investigation, Officer Bear summarized the events to another officer: "The title was inside the truck with the firearm, with [Edwards'] name on the title. [King] already said that he took the title and changed it, I got [King] caught up in his story right now where [King] took [Edwards'] name off that title to go sell it. I got him to admit it on camera that he did that." (Bodycam 23:23:50–24:10.) King was then taken to jail. All charges against King were later dismissed. (R. 1 ¶ 9.)

On August 8, 2024, King filed his Complaint in Kentucky state court regarding the circumstances of his arrest. (R. 1-1.) The case was subsequently removed to this Court. (R. 1.) King alleges that Edwards falsely asserted ownership over the truck, and, despite Officer Bear knowing this or investigating further, he arrested King. (R. 1 ¶¶ 6, 7.) King alleges that Officer Bear made false statements about him, knew that King had not committed the crimes alleged, and that there was no probable cause to arrest him. (R. 1 ¶¶ 8, 10.)

Under 42 U.S.C. § 1983, King asserts claims (Count 9) for false arrest and imprisonment, battery, and malicious prosecution in violation of the Fourth Amendment. Under state law, King brings claims for false arrest (Count 1), battery (Count 2), intentional infliction of emotional distress (Count 3), negligent infliction of emotional distress (Count 4), negligence (Count 5), malicious prosecution (Count 6), and punitive damages (Count 7). Now, Officer Bear moves to dismiss all claims against him. (R. 3.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); s*ee*

*also Courier v. Alcoa Wheel & Forged Products*, 577 F. 3d 625, 629 (6th Cir. 2009). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When reviewing a motion under Rule 12(b)(6), the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

In ruling on a motion to dismiss, courts may consider other sources outside of the complaint, such as documents that are "integral to the complaint . . . even if they are not attached or incorporated by reference." *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012). This is especially true in the context of viewing video footage in a qualified immunity case. *See Bell v. City of S.field*, 37 F.4th 362, 364 (6th Cir. 2022) ("So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos."). Applied here, the body-worn camera footage is integral to the complaint, as the video is referenced in and recounts the material facts alleged in the Complaint. (*See* R. 1 ¶ 7.) Additionally, both Parties cite to the body-worn camera footage in their briefings. (*See e.g.,* R. 3 nn 2–11; R. 6 nn. 1–3.) For these reasons, the Court references the body-worn camera video submitted by Officer Bear. (R. 10.)

## III. ANALYSIS

Officer Bear moves to dismiss King's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (R. 3 at 1.) Specifically,

Bear argues that he is entitled to qualified immunity on all claims. (R. 3-1 at 1.) In response, King argues that Bear is not entitled to qualified immunity because Bear did not have probable cause to arrest King. (R. 6 at 4.) The Parties agree that the determinative issue in this case is whether probable cause existed. (*Id.*; R. 7 at 1.)

### A. 42 U.S.C. § 1983

42 U.S.C. § 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

In this case, there is no dispute that Officer Bear was acting under color of state law when he arrested King; Officer Bear was on duty investigating a potential crime at the time of King's arrest. The issue becomes whether Officer Bear violated King's Fourth Amendment rights.

### i. Officer Bear had Probable Cause to Arrest King

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999). Thus, to

6

state a § 1983 false arrest claim, King must plausibly allege that Officer Bear "lacked probable cause to arrest" him. *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015).

An officer has probable cause to arrest "when, at the moment the officer seeks the arrest, the 'facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). The probable cause determination requires a review of the totality of the circumstances, and "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989).

Importantly, a plaintiff's claim for false arrest is defeated when an officer has probable cause for *any* crime. As explained in great detail by the Sixth Circuit, the Court need not determine whether probable cause existed for each and every one of the crimes King was charged:

> . . . the constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest. A false arrest, as its name suggests, is simply an arrest which isn't supported by probable cause. *Webb*, 789 F.3d at 666. The Supreme Court has held that the reason the officer gives for an arrest need not be the reason which *actually* provides probable cause for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004). If the facts known to the officers support probable cause in any form, then an individual may lawfully be arrested. *Id.* at 155. So it follows that when an officer arrests someone based on multiple charges, "it is not relevant whether probable cause existed with respect to each individual charge." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.). What matters is the validity of the *arrest* (the seizure) and not the validity of every *charge* (the potential justifications for the seizure). *Id.* As long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward. *See Alman v. Reed*, 703 F.3d 887, 900 n.3 (6th Cir. 2013).

*Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) (emphasis in original). Accordingly, if Officer Bear had probable cause to arrest King on any grounds, King's false arrest claim fails.

Although at the motion to dismiss stage the Court is typically supposed to rest its decision "primarily upon the allegations of the complaint," *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008), it need not accept King's legal conclusions or unwarranted factual inferences. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Additionally, the Court can rely on video evidence that "utterly discredits" the plaintiff's version of events. *Bailey v. City of Ann Arbor,* 860 F.3d 382, 386–87 (6th Cir. 2017). This is especially true in qualified-immunity cases. *See Bell v. City of S.field*, 37 F.4th 362, 364 (6th Cir. 2022). Upon review of the body-worn camera footage, the only reasonable determination is that Officer Bear had probable cause to arrest King.

King alleges that, before his arrest, he attempted to explain the transaction involving the vehicle, that he had purchased and paid for it, and that the person claiming ownership had neither registered nor titled the vehicle in his own name and had provided no consideration for it. (R. 1 ¶ 6.) He further alleges that these facts were known to Officer Bear before the arrest. (*Id.*) These allegations, taken as true, do not amount to a plausible showing that Officer Bear lacked probable cause.

The body-worn camera footage and the facts known to Officer Bear at the time of the arrest show otherwise. Edwards reported that his vehicle and firearm had been stolen, identified King as the suspect, gave detailed information about the vehicle and its location, and showed Officer Bear a photograph of a signed title in Edwards' name. Officer Bear then independently corroborated key parts of that account by locating the vehicle where Edwards said it would be, confirming that it matched the description provided, and finding that the torn-out ignition fit Edwards' key. Middleton later reinforced the suspicion by stating that

Edwards' gun had last been seen with King. Given the circumstances, these facts were reasonably trustworthy and sufficient to warrant a prudent person in believing that King had committed theft of the vehicle and firearm. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). Also, King's bare assertion that Officer Bear "had no probable cause for the wrongful arrest of the Plaintiff" is a legal conclusion, not a factual allegation, and the Court need not accept it as true. (R. 1 ¶ 6; *DirecTV, Inc.*, at 476.) Because King's Fourth Amendment rights were not violated, the § 1983 claim set forth in Count 9 of his Complaint is dismissed.

### B. King's State Law Claims

Count 1 of King's Complaint asserts a claim for false arrest and imprisonment. False arrest and false imprisonment claims are the same tort. *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). As with a constitutional claim for false arrest, a claim for false arrest under Kentucky law also fails when the arrest was supported by probable cause. *Id.* Because the only reasonable determination is that Officer Bear had probable cause to arrest King, his state law claim for false arrest and imprisonment fails. Accordingly, Count 1 of King's Complaint is dismissed.

Count 2 of King's Complaint alleges that Officer Bear committed battery by handcuffing King with no legal authority to do so. (R. 1 ¶ 29.) Kentucky law defines battery as "any unlawful touching of the person of another" and requires only single intent; that is, the actor need only intend to make contact, not that the contact be harmful. *Vitale v. Henchey*, 24 S.W.3d 651, 657–58 (Ky. 2000) (internal quotation omitted). "However, Kentucky law partially shields police officers from liability for such torts." *Tollison v. City of Independence*, No. 13-55-DLB-CJS, 2015 U.S. Dist. LEXIS 128876 at *35 (E.D. Ky. Sept. 25, 2015). "Under Kentucky law, an 'officer making an arrest may use such force as may be necessary to make the arrest but no more.'" *Hartman v. Thompson*, 931 F.3d 471, 486 (6th Cir. 2019) (quoting *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. Ct. App. 1973) For the

9

reasons previously stated, King was lawfully arrested. The mere fact he was handcuffed, without alleging that Officer Bear used more force than necessary, is insufficient to state a battery claim. Accordingly, Count 2 of King's Complaint is dismissed.

King "does not oppose" dismissing the intentional and negligent infliction of emotional distress, negligence, and malicious prosecution claims as set out in Counts 3–6 of his Complaint. (R. 6 at 9.) Accordingly, those counts are dismissed.

Count 7 of King's Complaint is titled "Punitive Damages." "Punitive damages is not a standalone claim in Kentucky." *Correll v. Mut. of Omaha Ins. Co.*, No. 6:19-CV-97-REW-HAI, 2023 U.S. Dist. LEXIS 187028 at *7 n. 12 (E.D. Ky. Oct. 18, 2023). Instead, a punitive damages claim is merely a "a remedy potentially available for another cause of action." *Petrey v. Ethicon, Inc.*, Civil Action No. 5:19-298-DCR, 2019 U.S. Dist. LEXIS 180314, at *3 (E.D. Ky. Oct. 18, 2019) (citation and quotation marks omitted); *Ammon v. Welty*, 113 S.W.3d 185, 188 (Ky. Ct. App. 2002) (explaining that punitive damages are only available when claims are asserted on which actual damages can be awarded). Because all other claims have been dismissed, King cannot recover punitive damages. Accordingly, King's stand-alone punitive damages claim is dismissed.

## IV.  CONCLUSION

For the aforementioned reasons, the Court hereby ORDERS the following:

1)  The Defendant's Motion to Dismiss (R. 3) is GRANTED;

2)  All claims asserted against the Defendant are DISMISSED; and

3)  the Court will enter a Judgment consistent with this Opinion.

This 28th day of July, 2026.



Signed By:

*Karen K. Caldwell*

United States District Judge